CASE 79.—ACTION BY THE MONTICELLO CONSTRUCTION COMPANY AGAINST E. O. STONE, LEO. F. SANDERS, A. MILLER AND OTHERS AND JOE MARSH TO RECOVER CERTAIN SUBSCRIPTIONS TO A PROJECTED RAILROAD FROM TATEVILLE TO MONTICELLO.—March 19, 1909.

## Stone &c. v. Monticello Construction Co.

Appeal from Wayne Circuit Court.

WM. H. HOLT, Special Judge.

Judgment for plaintiffs, defendants appeal.—Reversed.

1. Corporations—Capital Stock—Subscription to Stock—Actions on Subscriptions.—Where persons agreed to subscribe for stock in a railroad construction company to be organized the subscriptions to be binding only upon the bona fide subscription of a certain amount and the execution of an agreement by a committee of subscriptions with a railroad company for construction of a railroad, an action could be maintained in the name of the corporation on the subscription agreement; the conditions having been complied with.

2. Jury—Qualifications—Relationship to Stockholders in Corporation Suing for Subscription.—A juror would not be disqualified to serve, in an action by a corporation to recover on a

subscription for stock, merely because he was related to a stockholder in the corporation other than a party to the action and who had no real interest in the action.

3. Jury—Peremptory Challenge—Examination of Jurors.—A party in a civil action having the right to strike off three jurors without cause, he may ask questions which may enable him to know who the jurors are and their relationship, that he may exercise his right intelligently, though the answers to them would not disqualify the jurors.

4 Corporations—Conditional Subscription to Stock—Other Subscriptions—Subscriptions in Good Faith.—In an action by a corporation on subscriptions to stock, which were to be binding if a certain amount were subscribed in good faith, a subscription, made by a person whose apparent ability was not such as a person of ordinary prudence would have deemed reasonably sufficient to meet the assessments on the stock as they might be expected to be made, was not made in good faith though it was not made for the purpose of fraud and the directors did not know of such fraudulent intention.

5. Corporations—Conditional Subscriptions to Stock—Subscription by Corporation—Good Faith.—A subscription by a corporation is not invalid, within the meaning of such condition as not made in good faith, because made in violation of the subscriber's articles of incorporation; the subscriber having waived that defense and paid the subscription.

STONE & WALLACE, McQUOWN & BECKHAM and HARRISON & HARRISON for appellants.

O. H. WADDLE & SON attorneys for appellee.

CRESS & CRESS of counsel.

## AUTHORITIES CITED.

1. As to the validity of subscription papers for the organization of Corporations. Twin Creek & Coalmansville Turnpike Road Co. v. Lancaster, 79 Ky., 552; Bullock v. Falmouth, etc., Turnpike Co., 85 Ky., 184; Cadiz Railroad Co. v. Roach, 24 Ky. Law Rep., 1761; Curry v. Ky. Western R. R. Co., 25 Ky. Law Rep., 1372.

2. As to the construction of the phrase "in good faith" in contracts. Seymour v. Cleveland, 68 N. W., 171; Wright v. Mattison, 59 United States, 50; Crouch v. First Nat'l Bank, 40 N. E., 974; Docter v. Furch, 65 N. W., 253.

3. The burden of proving a precedent negative condition in contracts. 16 Cyc., 1928; Malone v. Ruffino, 79 Am. St. Rep., 127; Great Western R. R. Co. v. Bason, 30 Ill., 347.

4. As to the competency of jurors. Kemper v. City of Louisville, 14 Bush, 87; Ky. Wagon Co. v. City of Louisville, 97 Ky., 548; Searsburg Turnpike Co. v. Cutler, 6 Vt., 315; Lewis v. Hilsborough, etc., 23 S. W. 338.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

Some years ago a corporation known as the "Cumberland River & Nashville Railway Company," was organized for the purpose of building a railroad from Corbin, Ky., through Wayne county, into Tennessee. It made a contract for the building of the road from Tateville to Monticello, and this contract was sublet by the original contractors to Plunkett, Edwards & Clark. Some work was done upon the road between Tateville and Monticello, and then it developed that the railroad company was without means. The people about Monticello were very anxious to secure a railroad and they began to organize a construction company which was to finance the building of the road from Tateville to Monticello. With this view the following written contract was signed by a number of persons interested in the building of the railroad: Whereas it is proposed to organize a corporation with a capital stock of $100,000.00 divided into shares of $100.00 each under the name of the Monticello Railroad Construction Company, with its chief office at Monticello, Kentucky; said corporation to be organized for the purpose of constructing and building railroads and especially for the purpose of constructing and building the Cumberland River & Nashville Railroad, and taking over to itself all contracts now existing for building the said railroad from the Cincin-

nati Southern Railway near Tateville, Kentucky, to Monticello, Kentucky, and for such other work of construction as may be contracted for: "Now we, the undersigned, agree to take the number of shares set opposite our names and to pay for same at the rate of $100.00 each in installments as called for by the directors hereafter to be elected. It is further agreed that this subscription shall not be binding until there shall have been $80,000 of the capital stock of the said company subscribed for in good faith. It is further agreed that this subscription shall not be binding until an agreement and contract is entered into by a committee of the subscribers hereto, and the Cumberland River & Nashville Railroad Company, for the construction of said railroad from Tateville to Monticello, Kentucky, nor until satisfactory arrangements shall have been made with the present contractors now at work and holding contracts for work upon said line. Done at Monticello, Kentucky, this October 1, 1907." In October, 1907, when the necessary subscription was said to have been made, the Monticello Construction Company was organized. After the organization of the company, satisfactory arrangements were made with the contractors holding contracts for work upon the line, and a contract was entered into by a committee of the subscribers and the Cumberland River & Nashville Railroad Company for the construction of the railroad from Tateville to Monticello. Certain subscribers refused to pay their subscription when called for, and this suit was brought against them by the Monticello Construction Company to recover the amount they had subscribed. The defendants pleaded that $80,000 had not been in good faith subscribed, and relied on this fact to defeat the action on the subscription paper. On a trial of the action,

there was a judgment in favor of the plaintiff, and the defendants appeal.

It is insisted for the defendants that the contract is simply an agreement to subscribe for stock when the corporation should be organized and the conditions set out in the agreement complied with, and that under the ruling of this court in Mt. Sterling Coalroad Company v. Little, 14 Bush, 429, no action can be maintained upon the contract in the name of the corporation; but the latter cases fully maintain the right of action, holding that the rule was correctly stated in the case referred to, but by inadvertence was incorrectly applied. Twin Creek, etc., Turnpike Co. v. Lancaster, 79 Ky., 552; Bullock v. Falmouth, etc., Turnpike Co., 85 Ky., 184, 3 S. W., 129; Cadiz R. R. Co. v. Roach, 114 Ky., 934, 72 S. W., 280; Curry v. Ky., etc., R. R. Co., 78 S. W., 435, 25 Ky. Law Rep., 1372.

On the trial of the case, the defendants desired to interrogate the jurors as to whether any of them were related by blood or marriage to any of the other stockholders in the construction company. The court refused to allow the question answered and of this the defendants complain. The other stockholders in the construction company were not parties to the action. They had no interest in the action except such as the mere fact that they were stockholders in the corporation gave them. The rule is that a juror or judge is not always disqualified in a suit by a corporation merely because he is related to some of the stockholders in the corporation. The stockholders themselves would not be qualified to be jurors, but it would be carrying the rule further than it has been carried to say that in a case like this all their relatives were also disqualified. It was held in New York Life in

surance Company v. Johnson, 72 S. W., 762, 24 Ky. Law Rep., 1867, that a policy holder in a mutual life insurance company was not disqualified as a witness, under section 606 of the Civil Code of Practice, on the ground that his interest was so infinitesimal as not to amount to a real interest. We see no reason why this should not apply here, for it clearly appears from the record that the other subscribers to the contract have no real interest in the controversy. Their object was simply to get a railroad, and the proof shows their stock is worth nothing. The authorities holding that a kinsman of a stockholder in a corporation is incompetent as a juror rest upon the ground that the stockholder is beneficially interested in the result of the litigation. 24 Cyc., 274; 17 Am. & Eng. Encyc. 1126. Here the stockholders have no real interest in the litigation. On another trial the court will allow counsel for defendants to ask the panel the questions indicated, as they will thus be enabled to exercise their right of peremptory challenge more intelligently. Questions may be asked the panel, though the answer to them would not disqualify the juror, where the facts sought might be ground for the party striking off the juror. As he has the right to strike off three without cause, he may ask questions which may enable him to know who the jurors are and their relationships.

At the conclusion of the evidence, the court properly instructed the jury that they should find for the plaintiff unless they believed from the evidence that $80,000 had not been subscribed to the capital stock of the company in good faith, and that in this event they should find for the defendant. To define what was a subscription in good faith, he then gave the jury the following instruction: "If the jury believe from the

evidence that the stock subscribed to the plaintiff
company was subscribed with the intent and expecta-
tion to, pay for it, and that the party would be able to
do so, and without any purpose or intention to engage
or assist in the commission of a fraud, then any such
subscriptions were made in good faith; but, if any
subscription was made without intending and without
ability to pay, and for the purpose of committing or
assisting in the commission of a fraud upon the co-
subscribers and upon the plaintiff, the Monticello Con-
struction Company, and its board of directors knew
of such intention or inability to pay and such purpose
or intention to assist in committing a fraud, then any
such subscriptions would not have been made in good
faith.'' In 1 Morawetz on Corporations, Sec. 141, the
rule on the subject is thus stated: ''It is necessary
also that the required amount of capital be subscribed
by persons apparently able to pay the assessments
which may be made upon their shares. Fictitious sub-
scriptions or subscriptions made by persons unable to
contribute their proportion of the capital, do not sat-
isfy the requirement that the whole capital of a cor-
poration shall be subscribed before its members can
be assessed; but, if the required number of subscrip-
tions has been obtained in good faith from persons ap-
parently able to perform their duties as shareholders,
it is no defense to an action against a shareholder that
some of the subscribers have proved to be insolvent ''
See, also, Penobscot, etc., R. R. Co. v. White, 41 Me.,
512, 66 Am. Dec. 257; Lewey's Island R. R. Co. v.
Bolton, 48 Me., 451, 77 Am. Dec. 239, 10 Cyc., 400, 20
Am. & Eng. Encyc., 937. The purpose in getting up
the Monticello Construction Company was to get up
the money necessary to build the railroad. A sub-
scription which was not made by a person apparent-

ly able to pay it would not be a subscription in good faith within the meaning of the contract, although it was not made for the purpose of committing a fraud, and the defendants were not required to show that the board of directors knew of any such fraudulent inten. tion. In lieu of the instruction given, the court should have told the jury that a subscription in good faith was one made by a person apparently able to pay the assessments which might reasonably be expected to be made upon the stock, although the subscriber proved to be insolvent, but that a subscription was not in good faith if made by a person whose apparent ability was not such as a person of ordinary prudence would have deemed reasonably sufficient to meet the assessments on the stock as they might be expected to be made. While the proof was conflicting there was some evidence tending to sustain the defense. The instruction given by the court did not fairly present the case to the jury and was prejudicial to the substantial rights of the defandants under the evidence.

The proof, on another trial, as to the ability of the subscribers in contest to pay, will be limited to the facts known to the witnesses. Hearsay and information from others will be omitted, except it may be shown what information the directors had as to the ability of the subscribers in contest, as this will illustrate whether they exercised ordinary care in accepting the subscriptions as made by persons of apparent ability to pay. The court will allow proof of all statements made in the presence of any of the directors by any of the subscribers tending to show a want of apparent ability to pay on their part.

The subscriptions made by corporations which have been paid are not invalid because not warranted

by their articles of incorporation. When the corporation has waived this defense and paid its subscription, it cannot be said not to have been made in good faith.

Judgment reversed, and cause remanded for a new trial and further proceedings consistent herewith.