LAMAR HEISKELL *v.* M. MORRIS, *et al.*\*

(*Jackson.*    April Term, 1916.)

1. **CORPORATIONS.** Liability of shareholders for subscriptions.
    Under a subscription contract, making all subscriptions contin-
    gent upon the whole amount being subscribed, no assessments
    can be enforced until the entire capital stock has been sub-
    scribed. (*Post, p.* 243.)

    Cases cited and approved: Read v. Memphis-Gayoso Gas Co., 56
        Tenn., 545; Anderson v. Railroad, 91 Tenn., 44; Newport, etc.,
        Mill Co. v. Mims, 103 Tenn., 466; Pope v. Merchants' Trust Co.,
        118 Tenn., 506.

2. **CORPORATIONS.** Liability of shareholders for subscriptions.
    Promoters who complete subscription by subscribing for the
    balance of unsold shares, intending to sell such shares to
    others, are liable for the amount so subscribed. (*Post,* p. 243.)

3. **CORPORATIONS.** Subscriptions to capital stock. ."Procure."
    A subscription contract, providing that all subscriptions are on
    condition that the promoters "procure" subscriptions to the full
    amount of the capital stock, *held* not to require that all sub-
    scriptions be made by persons other than the promoters. (*Post,*
    *pp.* 243, 244.)

4. **CORPORATIONS.** Liability of shareholders for subscriptions.
    Subscriptions of corporate stock by insolvent persons cannot be
    counted to hold other subscribers for the amount of their sub-
    scriptions; but, if such subscriber was apparently solvent at the
    time he made the subscription, no fraud is perpetrated upon
    other subscribers by the acceptance of his subscription in good
    faith, though he afterward proves to have been insolvent.
    (*Post, pp.* 244-246.)

---

\*On the question of fraud as a ground of relief from sub-
scription to stock after insolvency of corporation, see note in
31 L. R. A. (N. S.), 900.
    As to jurisdiction of equity to enforce liability on unpaid sub-
scription to stock of a corporation see comprehensive note in 46
L. R. A. (N. S.)    440.

Heiskell v. Morris.

Cases cited and approved: Belfast, etc., R. Co. v. Brooks, 60 Me., 568; La. Purchase Exposition Co. v. Kuenzel, 108 Mo., App., 105; Stone v. Monticello Construction Co., 135 Ky., 659; Morgan v. Landstreet, 109 Md., 558.

5. CORPORATIONS. Actions on subscriptions. Burden of proof.

The insolvency of a subscriber, as relieving other subscribers from obligation to pay subscriptions, is a matter of defense, the burden of proving which is on those subscribers asserting it. (*Post, p.* 246.)

6. CORPORATIONS. Subscriptions. Fraud. Laches of shareholder.

The shareholder, whose subscription is obtained through fraud, must be diligent in discovering the fraud and repudiating the contract, to avoid his subscription as against creditors of the corporation. (*Post, p.* 246.)

7. CORPORATIONS. Subscriptions. Fraud. Laches of shareholder.

Where subscribers for more than two years took no steps to repudiate subscriptions, but allowed their names to remain on the corporate books as shareholders, and paid one assessment, *held,* that they could not defeat an action by receiver to recover unpaid subscriptions on the ground of fraud. (*Post, pp.* 247, 248.)

Cases cited and approved: Chamberlain v. Trogden, 148 N. C., 139; Sanger v. Upton, 91 U. S., 56; Chubb v. Upton, 95 U. S., 667; Lantry v. Wallace, 97 Fed., 865; Upton v. Trilbilcock, 91 U. S., 45.

FROM SHELBY

Appeal from the Chancery Court of Shelby County.—J. ALLEN, Special Chancellor.

CARUTHERS EWING, for appellants.

R. P. CARY, for appellees.

Mr. Justice Green delivered the opinion of the Court.

These suits were brought by the receiver of the United Investors' Company, an insolvent Tennessee corporation, to recover from the several defendants unpaid balances on their subscriptions to the capital stock of the corporation. The facts of each case are the same, and they were consolidated and heard together by the chancellor. There was a decree in favor of the complainant, and defendants have appealed.

The United Investors' Company was organized under the laws of Tennessee for the purpose of dealing in real estate at Memphis. Its capital stock was fixed at $100,000, to be divided into one thousand shares, of $100 each.

The concern was promoted by E. R. Parham and Burton B. Weil. They carried around the subscription list, and the said paper was headed by a subscription from Parham and Weil for seventy-five shares. The subscription list was dated October 30, 1912.

The first meeting of the incorporators was held February 15, 1913, by consent. At that meeting it appeared that subscriptions had been obtained for only seven hundred and forty shares. Counsel present advised the incorporators that the concern could not be legally organized until there were subscriptions for the entire one thousand shares. Parham and Weil then subscribed as trustees for the remaining two hundred and sixty shares. Notice had previously been

sent to all the subscribers, and immediately following this meeting of the incorporators a stockholders' meeting was held and directors elected. A directors' meeting was then held and officers elected, and the corporation was formally launched into business.

The subscription agreement contained a stipulation that ten per cent. of the subscriptions were to be payable in cash upon organization of the company, and the balance was to be payable in noninterest-bearing installments of fifteen per cent. every six months until the entire subscription was paid. The agreement also contained this provision:

"This agreement is made upon the condition that said E. R. Parham and Burton B. Weil shall procure subscriptions to the full amount of the capital stock, to wit, $100,000."

The minutes of the incorporators' meeting recited that the subscription book "was declared open and subscriptions for the capital stock were made by the parties whose names appear upon the subscription book, with the number of shares opposite their respective names in the following language." The subscription list then followed. The last subscription appearing is that of "Parham and Weil, Tr., two hundred and sixty shares." The minutes also set out "that one thousand shares have been subscribed for in full, and it was moved and seconded that the subscription book be closed." The stockholders' meeting which ensued was held upon three days' notice, and the

minutes of the stockholders' meeting show that the action of the incorporators accepting the stock subscriptions was ratified and confirmed.

The corporation purchased a piece of real estate in Memphis, which it did not pay for. The vendor sold the lot and recovered judgment for balance of purchase money, unpaid by the proceeds of sale, against the corporation. The corporation having no assets visible, proceedings were had by which a receiver was appointed.

Burton B. Weil was made general manager of this corporation when organized, and the direction of its affairs intrusted to him. The first call of ten per cent. on their subscriptions was collected from all the stockholders, except from Parham and Weil. It seems that the second call was collected from some of the stockholders.

Defendants resist these suits upon the ground that the capital stock of the corporation never was fully subscribed; that the subscription of Parham and Weil for two hundred and sixty shares was fictitious; further charging that Parham and Weil were insolvent.

It is moreover contended in behalf of defendants that under the subscription agreement Parham and Weil were "to use their best endeavors to obtain subscriptions for stock," and that Parham and Weil were to "procure subscriptions to the full amount of the capital stock," and it is insisted that this language of the contract contemplated that Parham and Weil were to procure or obtain such subscriptions to the capital

stock from others than themselves. Parham and Weil headed the list with a subscription for seventy-five shares, and it is urged that the terms of the agreement required them to procure all additional subscriptions necessary from others. It is accordingly said that their final subscription for two hundred and sixty shares as trustees was no compliance with the written specifications for the organization of this corporation.

As a matter of course, under this subscription contract and under the law, it was a condition of defendants' subscriptions to stock in this corporation, the capital of the corporation being fixed, that the whole amount of stock should be subscribed before a valid assessment could be levied upon them. *Read* v. *Memphis-Gayoso Gas Co.,* 9 Heisk. (56 Tenn.), 545; *Anderson* v. *R. R.,* 91 Tenn., 44, 17 S. W, 803; *Newport, etc., Mill Co.* v. *Mims,* 103 Tenn., 466, 53 S. W., 736; *Pope* v. *Merchants' Trust Co.,* 118 Tenn., 506, 103 S. W., 792.

We are unable to agree, however, that the necessary implication from this subscription contract was that all the stock except the seventy-five shares first taken by Parham and Weil was to be subscribed for by persons other than Parham or Weil. We are not able to give such construction to the words ''procure'' and ''obtain.''

The subscribers had a right to insist that the full amount of stock be taken by persons apparently solvent before such subscribers became liable for assessment. They had no right, however, to insist that any

particular persons or class of persons be secured as subscribers. If Parham and Weil were apparently solvent, the provisions of this contract and of the law would be met if they procured or obtained themselves to subscribe for such an amount of stock as they were apparently able to pay for.

The evidence indicates that the incorporators supposed Parham and Weil took these two hundred and sixty shares for the purpose of selling to others, but it was assumed that Parham and Weil were primarily liable for this last subscription. As a matter of law, they were so liable, and if such subscription reasonably appeared to be within their financial ability, there was no infraction of defendants' rights by the acceptance thereof.

The subscription was not fictitious. Parham and Weil are liable thereupon, whatever they themselves may have intended.

There is no showing made by defendants that Parham and Weil were not solvent at this time, and not apparently able to take care of the subscription. Insolvent subscriptions to corporate stock cannot be counted, so as to hold other subscribers. The test, however, is the apparent solvency of the subscriber at the time the subscription was made by him. If the subscriber was apparently solvent, there is no fraud on other subscribers occasioned by the acceptance of his subscription in good faith, although afterwards he may prove insolvent.

"Whether subscriptions by insolvent or irresponsible persons can be taken into consideration depends upon the circumstances. If they were not made and accepted in good faith, but with knowledge that the subscribers were insolvent and irresponsible, they cannot be counted. But it is otherwise if they were made by persons apparently solvent and able to pay, and accepted in good faith, although it may appear that the subscribers were and still are totally insolvent." 2 Clark & Marshall on Corporations, p. 1549.

"Fictitious subscriptions, or subscriptions made by persons unable to contribute their proportion of the capital, do not satisfy the requirement that the whole capital of a corporation shall be subscribed before its members can be assessed; but if the required number of subscriptions has been obtained in good faith from persons apparently able to perform their duties as shareholders, it is no defense to an action against a shareholder that some of the subscribers have proved to be insolvent." 1 Morawetz on Private Corporations, section 141.

See also 7 R. C. L., p. 234.

It has been held that the decision of the incorporators that the necessary amount of stock has been subscribed, and that the subscribers are responsible, is conclusive on these questions, in the absence of fraud on the part of such incorporators. *Belfast, etc., R. Co.* v. *Brooks,* 60 Me., 568; *Louisiana Purchase Exposition Co.* v. *Kuenzel,* 108 Mo. App., 105, 82 S. W., 1099. In the *Maine case* there appears to have been, how-

ever, commissioners authorized by law to effect the organization of corporations.

But in *Stone* v. *Monticello Construction Co.*, 135 Ky., 659, 117 S. W., 369, 40 L. R. A. (N. S.), 978, 21 Ann. Cas, 640, it was held to be a question for the jury to determine the good faith of a subscription and to say whether the apparent financial ability of a subscriber was such as a person of ordinary prudence would have deemed reasonably sufficient to meet his assessments. See, also, note under *Morgan* v. *Landstreet,* 109 Md., 558, 72 Atl., 399, 130 Am. St. Rep., 531, as reported in 16 Ann. Cas., 1247, referring particularly to cases collected on page 1256.

We need not, however, determine whether the acceptance of the subscription of Parham and Weil, trustees, by the incorporators, was conclusive of their apparent solvency or not. If this question is open for review by the court, the solvency of such subscription is a matter of defense, and there is no proof whatever offered to sustain this defense. There is nothing to indicate that Parham and Weil were not actually solvent, as well as apparently solvent, at the time of the organization of this corporation.

We think that defendants are likewise precluded at this late date from relying on the matters urged in their behalf. The law is well settled that a shareholder whose subscription was obtained through fraud must be diligent in discovering the fraud and repudiating the contract, if he expects to avoid his subscription as against creditors of the corporation.

This subscription was dated October 30, 1912. The corporation was organized February 15, 1913. These suits by the receiver were not brought for more than two years after organization, and prior to the bringing of the suits the defendants herein had taken no steps to repudiate their subscriptions, had allowed their names to remain on the books of the corporation as shareholders, and had paid the first assessment on their subscriptions. Such delay and laches on their part deprived them of the defenses they seek to make herein.

"There are obvious reasons why a shareholder of a corporation should not be released from his subscription to its capital stock after the insolvency of the company, and particularly after a proceeding has been inaugurated to liquidate its affairs, unless the case is one in which the stockholder has exercised due diligence, and in which no facts exist upon which corporate creditors can reasonably predicate an estoppel. When a corporation becomes bankrupt, the temptation to lay aside the garb of a stockholder, on one pretense or another, and to assume the role of a creditor, is very strong, and all attempts of that kind should be viewed with suspicion." *Newton Nat. Bank* v. *Newbegin*, 74 Fed., 135, 40 U. S. App., 1, 20 C. C. A., 339, 33 L. R. A., 727.

To the same effect, see *Chamberlain* v. *Trogden*, 148 N. C., 139, 61 S. E., 628, 16 Ann. Cas., 177; *Sanger* v. *Upton*, 91 U. S., 56, 23 L. Ed., 220; *Chubb* v. *Upton*, 95 U. S., 667, 24 L. Ed., 524; *Lantry* v. *Wallace*, 97

Fed., 865, 38 C. C. A., 510; *Upton* v. *Tribilcock*, 91 U. S., 45, 23 L. Ed., 203.

See other cases collected in note in 16 Ann. Cas., 180.

For the reasons stated, we think there was no error in the decree of the chancellor, and the same must be affirmed.

There is, however, in the record a stipulation between counsel that defendants shall take no objection to the form in which these suits are brought, and that if complainant is successful no execution will issue on any judgment until proper steps are taken by complainant to equalize among all the subscribers to the capital stock of this corporation the burden of discharging its unpaid indebtedness. That such steps may be taken to equitably work out the rights of all parties interested, these causes will be remanded to the chancery court of Shelby county for further proceedings.