**Charles Douglas MIRACLE, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

March 9, 1983.

Jack E. Farley, Public Advocate, M. Gail Robinson, Asst. Public Advocate, Frankfort, for appellant.

Steven L. Beshear, Atty. Gen., Carl Miller, Asst. Atty. Gen., Frankfort, for appellee.

## OPINION OF THE COURT

Appellant, Charles Douglas Miracle, has been convicted of murdering a Lexington, Kentucky, cab driver, John Willard. Willard was shot to death and robbed on the night of March 1, 1981. His body was found the next morning beside a road in Johnson County.

The case was tried under KRS 507.020 as a capital offense. The defense did not deny that appellant killed Willard, but maintained that he had emotional problems which impaired his mental status, reducing the level of the offense. The jury was instructed on murder during the commission of robbery in the first-degree as an aggravating circumstance. The jury was also instructed on first-degree manslaughter and second-degree manslaughter as lesser-included offenses. Appellant was found guilty of the principal charge and the jury recommended a life sentence, which the court later imposed.

Miracle appeals as a matter of right, claiming a number of errors. We have decided that this case must be reversed because many of the jurors who were on the panel from which the jury was selected were present on a previous occasion when the appellant entered a guilty plea, later withdrawn, and a number of these jurors actually served on the jury that tried him.

The sequence of events before the trial is as follows: On June 8, 1981, appellant entered a plea of guilty to capital murder, unconditionally, with no offer from the Commonwealth to recommend a sentence less than death, nor suggestion from the

court that such would occur. On July 6, 1981, appellant moved to withdraw this first plea of guilty. On August 4, 1981, six days before the trial, against the advice of counsel and in the presence of many of the panel who later tried him, appellant again went through the entire guilty plea procedure, including all the incriminating admissions attendant to it. On August 10, 1981, appellant once again withdrew his guilty plea and proceeded to trial. The jury was selected. The prosecutor called to the court's attention that appellant had entered a guilty plea in the presence of this jury panel and the court stated: "I know, but I'm not going to disqualify the panel."

The Commonwealth argues that any error in seating these jurors was waived by failure to make individual challenges for cause. The court's remarks at the outset of voir dire were sufficient to indicate how it would rule on this matter.

The most recent Kentucky case on the subject, *Tipton v. Commonwealth,* Ky., 640 S.W.2d 818 (1982), reversed a conviction because the prosecutor repeatedly elicited testimony regarding a plea of guilty of a co-indictee in a robbery case. In *Tipton* we stated:

> " . . . As this court made clear in *Parido v. Commonwealth,* Ky., 547 S.W.2d 125 (1977), quoting *Martin v. Commonwealth,* Ky., 477 S.W.2d 506 (1972), 'It has long been the rule in this Commonwealth that it is improper to show that a co-indictee has already been convicted under the indictment.' To make such a reference and to blatantly use the conviction as substantive evidence of guilt of the indictee now on trial is improper. . . . "

The Commonwealth does not dispute the general principle that it is error to bring to the jury's attention that a defendant's guilty plea was previously entered and withdrawn. *Oliver v. United States,* 202 F.2d 521 (6th Cir.1953); *Pharr v. United States,* 48 F.2d 767 (6th Cir.1931). But the Commonwealth contends that it was harmless error in this case because the appellant did not contest the killing. This begs the point. The point was whether the killing that took place should be punished as capital murder or as some lesser degree of homicide.

The fact was that many of these jurors knew that appellant had pleaded guilty to murder as charged. Some had heard the accused admit to the additional information spread upon the record at the time such a guilty plea is taken—information that dispelled any doubt about the mental status of the accused. This goes far beyond merely hearing comment on the withdrawn plea, which this court has already ruled improper.

In this case, even if we were to assume that reversible error had not already been committed by the manner and extent to which the jury was made aware of the withdrawn plea, the prosecutor's closing argument removed all doubt. The prosecutor exceeded the bounds of propriety when he expounded on the guilty plea in closing argument. The judge ruled at the outset of the case that the accused's guilty plea should not be considered as evidence, or given any weight against him, and admonished the jurors accordingly during voir dire. He questioned the jurors as to whether they could disregard having heard it. But in closing argument, the prosecutor made sure that the jurors would remember the guilty plea and consider it against the accused, in these words:

> "He entered a plea; we voir dired on that as to whether you had heard it; I think some of you did. He changed that plea. Even as late as last Friday he changed that plea. Then Monday morning we go into trial, this trial, and we talk about on voir dire the difference between the penalty phase and the guilty phase if the evidence is there. So I'm kind of starting to wonder in my mind is Doug Miracle so unstable or is Doug Miracle kind of maybe like crazy like a fox?"

Defense objected and was overruled. This was reversible error.

We will not discuss the other claims of error, which we do not consider substantial enough to warrant reversal.

The judgment of the Johnson Circuit Court is reversed and the case remanded to the circuit court for a new trial.

STEPHENS, C.J., and AKER, GANT, LEIBSON and STEPHENSON, JJ., concur.

LEIBSON, J., files a separate concurring opinion.

WINTERSHEIMER, J., dissents and files a dissenting opinion.

LEIBSON, Justice, concurring.

I believe that there are at least two other major errors which would require this case to be reversed in addition to the fact that the jury was aware that the appellant had entered a guilty plea to the charge.

First, the trial court abused its discretion in refusing voir dire of prospective jurors as to their exposure to pretrial publicity and, second, the instructions were erroneous because they failed to adequately explain that the crime is reduced to first-degree manslaughter if the jury finds that the appellant was acting under the influence of extreme emotional disturbance.

In this case, in addition to the usual highly visible pretrial publicity attendant upon most bizarre murder cases, articles in the local newspaper reported that appellant was on probation from a previous felony conviction at the time of his arrest; that he admitted shooting the cab driver in the back; that he pleaded guilty and asked to be electrocuted for the crime; and that he later changed his plea to not guilty. Unquestionably, the pretrial publicity about appellant's case was extensive, included some points that were inadmissible in court, and would tend to be highly prejudicial to the mind of any juror who read it.

During voir dire, the court questioned the jurors as to their awareness of pretrial publicity. To those who answered affirmatively, inquiry was limited solely to whether they could be impartial regardless of what they had read or heard. Further, the questions to the jurors were so structured as to suggest that they should answer that they could remain impartial.

Against this background, defense counsel sought permission to voir dire the jury about what they remembered reading in the newspapers. The court ruled that no such inquiry would be permitted. I would hold that in the circumstances of this case such inquiry should be permitted, even though it would require individual voir dire out of the hearing of the rest of the panel to accommodate the inquiry.

In *Gall v. Commonwealth*, Ky., 607 S.W.2d 97, 102 (1980), we pointed out that the constitutional standard of fairness requires "a panel of impartial, 'indifferent' jurors," (citing *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). *Irvin* states 366 U.S. at page 723, 81 S.Ct. at page 1643, 6 L.Ed.2d at page 756:

"... It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. (Citations omitted)

The adoption of such a rule, however, 'cannot foreclose inquiry as to whether, in a given case, the application of that rule works a deprivation of the prisoner's life or liberty without due process of law.' ... (T)he test is 'whether the nature and strength of the opinion formed are such as in law necessarily ... raise the presumption of partiality. The question thus presented is one of mixed law and fact....'"

Thus, while the ultimate test of the juror's qualification to serve is whether he can disregard what he has previously read or heard and try the case solely on the evidence presented at trial and the instructions of the court, the inquiry into this question is a factual one. It should not be foreclosed by an affirmative answer to a formula-type question.

Mere agreement to a leading question that the jurors will be able to disregard what they have previously read or heard, without further inquiry, is not enough in this case to discharge the court's obligation to determine whether the jury could be impartial.

"... The influence that lurks in an opinion once formed is so persistent that

it unconsciously fights detachment from the mental processes of the average man.... No doubt each juror was sincere when he said that he would be fair and impartial to petitioner, but the psychological impact requiring such a declaration before one's fellows is often its father...." *Irvin v. Dowd,* supra, 366 U.S., at 728, 81 S.Ct., at 1645, 6 L.Ed.2d, at 759.

As Chief Justice Hughes observed in *United States v. Wood,* 299 U.S. 123, 57 S.Ct. 177, 81 L.Ed. 78 (1936):

"... Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula."

I would not reverse the trial court in this case had it decided, after appropriate inquiry, that the jurors exhibited sufficient impartiality. However, it was reversible error to foreclose the inquiry necessary to make the decision. In this case, the court's erroneous rulings deprived the appellant of his right to a fair and impartial jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Section 11 of the Kentucky Constitution. A new trial should be granted.

This court has long protected the right of inquiry on voir dire even when the answer to the question would not justify disqualification for cause, in order that counsel can "exercise the right of peremptory challenge more intelligently." *Stone v. Monticello Construction Co.,* 135 Ky. 659, 117 S.W. 369, 371 (1909). I do not condone, much less suggest, that a trial court should permit questions directed at instructing the jury in the lawyer's view of the law, or persuading the jury to the lawyer's view of the facts. But inquiry properly phrased to elicit from jurors facts known or opinions held by the jurors which reasonably could be expected to influence their decision is not only permissible, it is desirable. It is needed to answer the question of whether a juror is so prejudiced as to be disqualified for cause,

and to give counsel a reasonable basis for intelligently exercising peremptory challenges. The right to peremptory challenges is meaningless if effective voir dire is denied.

The trial court decided that there was evidence presented at the trial sufficient to justify an instruction on first-degree manslaughter as a lesser-included offense of the principal charge.

This brings us to a question of whether there was error in the instructions as given on this point. Instruction # 1, Murder, required the jury to believe beyond a reasonable doubt that when appellant shot John Willard to death:

"(B) ... he did so with the intention of causing John Willard's death and not while acting under the influence of extreme emotional disturbance for which there was a reasonable justification or excuse under the circumstances as he believed them to be."

The first-degree manslaughter instruction is worded exactly the same except that in paragraph (B) the language is, "That he did so with the intention of causing John Willard's death." Nothing is included about the element of extreme emotional disturbance.

Appellant tendered, and was refused, a first-degree manslaughter instruction which would have expressly pointed out the difference between murder and first-degree manslaughter by adding to (B) "but was acting under the influence of extreme emotional disturbance for which there was a reasonable justification or excuse under the circumstances as he believed them to be." In addition, appellant tendered an instruction providing an explanation to the jury in the reasonable doubt instruction as to the consequences of a finding that appellant acted under the influence of extreme emotional disturbance.

In *Bartrug v. Commonwealth,* Ky., 568 S.W.2d 925 (1978), we affirmed where the trial court gave an explanation of the mitigating effect of the presence of extreme emotional disturbance in the reasonable

doubt part of the instructions. While this may be permissible, I believe it would be better form for the instructions to point up the difference between the absence and the presence of this element by language in the first-degree manslaughter instruction.

When this case is retried, if there is evidence to support a finding of the presence of extreme emotional disturbance, as there was at the first trial, appellant's tendered Instruction II(b) should be given. It states as follows:

"(b) That in so doing, he intended to cause John Willard's death, but was acting under the influence of extreme emotional disturbance for which there was a reasonable justification or excuse under the circumstances as he believed them to be."

By including this explanation in the first degree manslaughter instruction, rather than as part of the reasonable doubt instruction, we adhere to the statutory language and avoid any undue emphasis on this aspect of the case which may result from putting it in the reasonable doubt instruction. The reasonable doubt instruction given at the first trial is then clear and sufficient without additional explanation.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent. After a careful review, I believe the errors complained of are not prejudicial to the degree that reversal is required. Considering the case as a whole, I do not believe the result would have been any different.