## Clark v. Commonwealth.

(Decided May 7, 1937.)

JACK E. FISHER for appellant.

B. M. VINCENT, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

The appellant, L. C. Clark, was by an indictment, returned October 2, 1936, by the McCracken county grand jury, accused of the wilful murder of one Isham Harvey, by "shooting and wounding" him with "a pistol * * * a deadly weapon, from which shooting and wounding the said Isham Harvey did then and there die."

Upon appellant's trial under this indictment, he was convicted of voluntary manslaughter and his punishment fixed at two years' imprisonment.

From the judgment entered upon such verdict of the jury, he has appealed, seeking its reversal upon two grounds: (1) That the court erred in admission of incompetent evidence; and (2) that it failed to instruct upon the whole law of the case.

The facts as disclosed by the record are that on the night of July 18, 1936, the defendant, L. C. Clark, with his wife and two daughters, drove to a roadhouse maintained by Harry Harvey and his wife at West Paducah, some six miles from Paducah, Ky., in connection with which they operated twice a week a dance floor, which they provided by constructing a large platform, inclosed with a rope, just in front of the roadhouse. To those who wished to go upon the floor and dance, the Harveys charged an admission fee.

Mr. Clark, it is shown, drove out with his family, as stated above, and a Mr. Towery, a friend and fellow

workman for the Royal Motors Company, to this Harvey roadhouse at about 11 o'clock of this night in evidence, where, after several fights, he shot and killed Mr. Isham Harvey, an old gentleman some 69 years of age and the father of Harry Harvey, the operator of the place, who on that night was assisting Mr. and Mrs. Harvey by selling and collecting admission tickets at the entrance to the dance floor.

There is evidence that when the appellant, Mr. Clark, arrived, he objected to old Mr. Harvey's requiring him to pay an admission fee to the dance floor, saying that he did not know that an admission charge was made, but that, after being told he could enter for a quarter (half price), appellant paid him, though somewhat angrily, remarking to old man Harvey, in the presence of Mrs. Clark, that he "would be sorry for this."

It appears that after entering the inclosure, he proceeded to dance with his wife, but that she became angry with him because of his somewhat intoxicated condition and his behavior, which led to a quarrel between them and her taking him from off the floor.

The evidence is that upon leaving the dance floor, they walked a short distance from it, when their quarrel developed into a fight.

The witness Towery says that seeing this situation, he went to where they were, when, finding Clark threatening to "whip the hell out of his wife," he took hold of him, threw him to the ground and held him, but released him upon Clark's promise not to hurt or shoot anyone if he "let him up"; that just as appellant was getting up, upon being released, he drew his gun from within his shirt, when Harry Harvey, the proprietor of the roadhouse, and one or two other men, took hold of him, holding up his hand in which he had the gun to prevent his shooting it, and proceeded to shove him back over the fender of a car, where Harry Harvey belabored him lustily with a heavy instrument (which he states was a padlock attached to a "hame string"), cutting and bruising him badly; that appellant got his hand in which he held the gun loose or down and fired it, which, it appears, caused every one, including his assailants to "break and run away," also, that as the appellant "came up, kinder on one knee," he leveled his gun, aimed it at old man Harvey and shot him; that old

Mr. Harvey was at the time some distance away and had not taken, nor was then taking any part in the fight (which is admitted); that he was some twenty or more feet distant from his son, Harry (who had run up on his porch at the first shot), though appellant claims that he was shooting at Harry, his assailant, when he accidentally shot and killed old man Harvey.

Appellant states that he did not want to shoot any one, but that he thought he was going to be killed by his assailants as they held him down and beat him over the head, and that he shot to save his life. He states that he did not mean to shoot old man Harvey, the deceased, as he had nothing against him, and that he only shot him accidentally, thinking that he was firing at his son, Harry Harvey, or other of his assailants.

It may be added that in the melee and general confusion that arose when what appeared to be a fight between Towery and the appellant occurred, and the fight following it between appellant Harry Harvey and others, the witnesses thereof say they could not tell just who was doing the "hitting and knocking" and who were in the struggle being struck; that several of them received blows on the head, but that they did not know by whom they were struck.

In view of the above summary of the situation resulting in the killing of the deceased, old man Harvey, we deem it hardly necessary to further narrate the voluminous evidence showing the general "free for all" rough-house and fight that occurred at the Harvey roadhouse about midnight upon the occasion when deceased was shot by appellant, so will proceed with the consideration of appellant's two assignments of error complained of as having been committed upon his trial.

His objection is first addressed to the admission of Mrs. Harvey's evidence in regard to the earlier disagreement arising between the appellant and old man Harvey, upon his arrival at the dance floor, over being charged an entrance fee and his statement that he, old man Harvey, "would be sorry for this."

Appellant contends that this was prejudicial, in that it occurred some two hours earlier in the evening and was not admissible as a part of the res gestæ.

It is hardly needful to indulge in a lengthy answer to this contention, in that this evidence, as to the ap-

pellant's quarrel upon entering the dance floor and his remark to old man Harvey, whom he killed about an hour thereafter, we are convinced was clearly competent, if not as a part of the res gestæ, as a threat made against deceased.

Also, he complains of the evidence as to his quarrel with his wife, and as to his fighting with and cursing her (even though these acts just preceded his fight with Towery and Harry Harvey) in that it tended to discredit him in the eyes of the jury. Also, he contends that what he said to his wife at such time was of the nature of a confidential communication between man and wife.

While doubtful of this being a proper characterization of appellant's bullying statement to his wife that he would "beat the hell out of her," which threat he immediately proceeded to execute, it yet was clearly competent as tending to show his state of mind during this brief period of his "running amuck," and clearly it could not be considered a confidential communication under the circumstances, wherein it was proclaimed publicly and in the hearing of the trouble-hunting crowd.

Appellant further complains that while testifying in his own behalf he was improperly interrogated as to whether he had not somewhat lately "stuck up" another roadhouse or had not had a fight at yet another and still a third like place, to which he answered that he had not.

It is clearly within the rule that questions may be asked in good faith of a witness as to particular prior offenses committed by him, for the purpose of impeaching his credibility.

We, in fact, are unable to concur in the view of the appellant that any prejudice was done him by the court in its admission of the evidence complained of.

Appellant's next objection is that the court erred in failing to give instructions upon the whole law of the case, which operated to the prejudice of his substantial rights.

This objection, more specifically stated, is directed to the murder and manslaughter instructions Nos. 1 and 2 given by the court, which appellant contends were erroneous by reason of the court's failure to submit in

each of said instructions that appellant willfully, maliciously, wrongfully, and with malice aforethought shot at Harry Harvey, and accidentally hit the deceased, Isham Harvey, relying in support of his contention, on the case of Logan v. Com., 187 Ky. 793, 220 S. W. 742, 743, where, upon the facts of the case the court said:

"In instruction No. 1 the court told the jury, in substance, to find appellant guilty of willful murder if they believed from the evidence beyond a reasonable doubt, that before the finding of the indictment he did 'unlawfully, willfully, feloniously, and of his malice aforethought shoot and wound Sarah King, or shoot at Thomas King and missed him, but hit Sarah King,' etc. In view of another trial we deem it proper to say that the words 'unlawfully, willfully, feloniously, and of his malice aforethought' should be repeated after the word 'or' and before the word 'shoot' in the clause, 'or shoot at Thomas King and missed him,' so that the jury may clearly understand that, before they can convict appellant of murder on the ground that he shot at Thomas King and hit Sarah King, they should further believe that he unlawfully, willfully, feloniously, and of his malice aforethought shot at Thomas King. For the same reason the qualifying words 'without malice, did willfully and feloniously, in sudden affray, or in sudden heat and passion,' in the instruction on manslaughter, should be repeated after the word 'or' and before the word 'shoot' in the clause 'or shoot at Thomas King and missed him.' "

While fully approving the correction of the instruction given as there made under the facts of that case, we do not find the facts in the instant case bear any such analogy with them as to make the court's holding in that case here applicable, and even were there more analogy, the opinion expressly states that such correction of the there criticized instructions is directed to the end that the jury may understand that before they can convict the appellant there of murder on the grounds that he shot at Thomas King and shot Sarah King, they should believe that he unlawfully, willfully, etc., shot at Thomas King. This latter named protection of the appellant, permitting the giving of the corrected instruction, was here fully caried out by the self-defense instruction (No. 4) given by the court, wherein the jury was expressly told that if they believed from

the evidence "that at a time, when defendant was in immediate danger of death or great bodily harm then about to be inflicted on him by Harry Harvey, or one or two other persons, he [defendant] shot at said Harry Harvey, or one or two other persons, and missed him, or them and accidentally and unintentionally shot and killed Isham Harvey, then the jury will *find the defendant not guilty upon the grounds of self-defense and apparent necessity therefor.*" (Italics ours.)

Clearly, this instruction fully protected the rights of the defendant if he was, at the time he shot and killed old man Harvey, rightly or lawfully shooting in his own self-defense, or to him apparent self-defense, at Harry Harvey and others associated with him in beating him, but there is no evidence here supporting the giving of such an instruction or to which it could be applied, in that it is clearly shown that upon the first shot being fired by the appellant, all of his assailants, including Harry Harvey, had dispersed and were fleeing to other quarters and that, when appellant fired the second shot, he at the time leveled his gun at old man Harvey and struck and killed the man at whom he then shot; that he did not accidentally kill him by firing a shot which missed its intended mark and struck him. Neither does it appear that he, at the time of firing the second shot that killed old man Harvey, was shooting at Harry Harvey in his self-defense or shooting at him at all or that Harry Harvey was then near him. Also, see, Thompkins v. Com., 90 S. W. 221, 28 Ky. Law Rep. 642.

We are therefore confident that the court here properly instructed the jury on all of appellant's theories of the case supported by any evidence and that it did not fail to give the whole law of the case covering the evidence in the criticized instructions.

Therefore, being of the opinion that no error prejudicial to the appellant's right was committed upon the trial, but if there was any error found to have been committed, it was one more favorable than prejudicial to appellant, we conclude that the judgment of the trial court, being free from error either in the admission of evidence or in the matter of the instructions given by it, should be, and it is, affirmed.