**COMMONWEALTH of Kentucky, Movant,**

v.

**Michael Joe McFERRON and Clarence Kirby, Respondents.**

Supreme Court of Kentucky.

Dec. 6, 1984.

David L. Armstrong, Atty. Gen., Christopher W. Johnson, Asst. Atty. Gen., Frankfort, for movant.

Carl R. Clontz, Clontz & Cox, Mount Vernon, for respondent McFerron.

William G. Crabtree, London, for respondent Kirby.

STEPHENSON, Justice.

Michael Joe McFerron was convicted of third-degree sexual abuse, KRS 510.130, and aiding and abetting sexual misconduct and sexual misconduct, KRS 502.020(1), KRS 510.140. McFerron was sentenced to imprisonment for one year and a fine of $500. Clarence Kirby was convicted of rape in the first degree, KRS 510.040, and sentenced to imprisonment for ten years. The Court of Appeals remanded the case with directions. We granted discretionary review and reverse.

There is no challenge to the sufficiency of the evidence to convict, so a recitation of the facts here is not necessary.

The principal assertion of error for both McFerron and Kirby is systematic exclusion of distinctive groups from both the grand jury and petit jury panels.

Prior to trial a motion was made to quash the indictment, set aside the jury panel and continue the case. This motion was supported by an affidavit based on personal belief of counsel for McFerron. The motion was denied. So far as we can tell from the record, there was no request for a hearing for the taking of evidence, and no proof was offered.

The affidavit is as follows:

"Affiant states that he has been familiar with and has reviewed the names of every jury panel selected for service since 1960 and that during said period of time no lawyers of [sic] physcians [sic] have been called for jury duty although at all times during the period physicians and lawyers were available and qualified for jury service. Affiant states that he believes that there has been a systematic exclusion of those classes of persons from jury service for the last 20 years.

"Affiant further states that during the entire period mentioned in the above paragraph that the Rockcastle Circuit Court has had three five-week terms each year and that those terms have commenced on the third Mondays of the months of March, July and November in each of said years. Affiant states that for the last five or six years during the March and November terms of said court, schoolteachers have been systematically excluded from jury service. The exclusion of teachers was accomplished in a manner different from that stated above relevant to attorneys and physicians. No attorneys' or physicians' names were ever pulled from the jury drum. In the case of school teachers, except for the current term of the Rockcastle Circuit Court, their names were placed in the jury drum and they were selected for jury duty but the court, upon request as a matter of comity, automatically excused them from jury service during the March and November terms.

"Affiant believes that this exclusion of school teachers from jury service for the March and November terms of the Rockcastle Circuit Court has been absolute for the past five or six years and that no school teacher has served on a jury during those periods."

The Court of Appeals held that the affidavit was sufficient to make out a *prima facie* case of systematic exclusion and the failure of the Commonwealth to then go

forward with proof to negate the affidavit required that the case be remanded in order that the Commonwealth be enabled to demonstrate that the jury was composed constitutionally.

We are of the opinion the Court of Appeals is in error in holding that the affidavit made out a *prima facie* case shifting the burden to the Commonwealth to prove constitutional standards had been met. In considering this proposition, we do not differentiate between standards for grand jury or petit jury. While there may be some differences in applying various sections of the U.S. Constitution, for the purposes of this case there is no difference.

We base our decision on the following U.S. Supreme Court cases on the subject: *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); *Alexander v. Louisiana*, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977); and *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

■ We do not consider differently underrepresentation and systematic exclusion. For the purpose of the requirements of making out a *prima facie* case of unconstitutional composition, there is no difference. In a given case underrepresentation constitutes systematic exclusion.

*Swain* is an alleged underrepresentation case. The *evidence* there was that while Negro males constituted 26% of all males in the county only 10% to 15% of the grand and petit jury panels have been Negro and no Negro had served on a petit jury. In denying relief, the court said, "But purposeful discrimination may not be assumed or merely asserted .... It must be proven ...." The court further stated: "Nor do we consider the evidence in this case to make out a prima facie case of invidious discrimination under the Fourteenth Amendment."

In *Alexander*, challenging the make-up of the grand jury, the evidence showed that 21% of the local adult population were Negro, 13% returning questionnaires to the commissioners were Negro, 6.75% of the persons ultimately selected as prospective grand jurors were Negro, only 1% of the 20 persons drawn for the defendant's grand jury venire were Negro, and none of the 12 persons on the grand jury which indicted the defendant were Negro.

The Court held that the proof adduced by *Alexander* established a *prima facie* case of invidious racial discrimination, shifting the burden of proof to the state to rebut the presumption of unconstitutional action.

In *Taylor* there was a stipulation that of the people eligible for jury service in the judicial district 53% were female, but no more than 10% of the persons on the jury wheel were women and none were selected on the defendant's venire. A state statute excluded women from jury service unless they had previously filed a written declaration of their desire to be subject to jury service.

The court held that women had been systematically excluded and that the make-up of the jury which convicted Taylor was impermissible constitutionally. No mention is made of a *prima facie* case for the obvious reason of the stipulation which constituted the proof from both defense and prosecution.

In *Castaneda* there was a challenge to the grand jury on underrepresentation of Mexican-Americans. The *evidence* showed that the population of the county was 79% Mexican-American, but only 39% of the persons summoned for grand jury service were in such class. The court held that a *prima facie* case of discrimination against Mexican-Americans was established since statistics showed that Mexican-Americans constituted a clearly identifiable class.

In *Duren* state law granted women an automatic exemption from jury service at their request. *Duren* established that while 54% of all adults in the county were women, only 26% of those summoned from the jury wheel were women and that only 14% of the persons on the post-summons venires were women. Duren's all male

jury was selected from a panel of 53, of whom 5 were women. None of the statistical evidence was disputed. The court held that a *prima facie* case of systematic exclusion was established, and since there was no showing otherwise the case was reversed reaffirming the *fair cross-section* inquiry in *Taylor* stating that the wheels, pools of names, panels, or venires from which jurors are drawn must not systematically exclude distinctive groups in the community and thereby fail to be representative thereof.

■ The common thread running through these cases on the proposition of making out a *prima facie* case is that proof by taking evidence is required in the absence of a stipulation. *Swain* is the only case stating such allegations as made here must be *proven.* The other opinions accept this proposition by inference. Here we have no suggestion that proof was offered or available to establish a *prima facie* case of systematic exclusion of a distinctive group.

■ We are of the opinion that we should not go beyond the opinions of the U.S. Supreme Court in this respect and are of the further opinion McFerron and Kirby did not establish a *prima facie* case requiring the Commonwealth to go forward with proof. We hold the Court of Appeals' decision erroneous in *requiring* the Commonwealth to establish validity of the jury panel in the circumstances of this case.

We have heretofore stated in *Tinsley v. Commonwealth,* Ky., 495 S.W.2d 776, 781 (1973), that "... purposeful discrimination must be proved."

■ In arriving at this decision we have re-examined *Colvin v. Commonwealth,* Ky., 570 S.W.2d 281 (1978). In *Colvin* there was a motion by counsel and what the opinion called an avowal that the jury commissioners would testify that the trial court specifically instructed them to exclude schoolteachers from the jury wheel and that this instruction was followed. We are of the opinion that, in conformity with our holding in this case, *Colvin* should be and it is overruled.

Finally the allegations in the affidavit regarding schoolteachers seem to assert improperly excusing schoolteachers from jury service on the part of the trial court. This allegation does not concern exclusion from the jury drum and does not rise to constitutional proportions. We do not see that there is even an allegation of violation of KRS 29A.090–29A.100. We mention schoolteachers here only for the reason that *Colvin* held that the "fair-cross-section" requirement of the U.S. Supreme Court cases would prohibit the exclusion of schoolteachers in the jury wheel. In examining this holding in the light of the cited cases, we find distinctive groups in the constitutional sense included: *Swain,* Negroes (26% of the county population); *Alexander,* Negroes (21% of the parish population); *Castaneda,* Mexican-Americans (79% of the county population); *Taylor* and *Duren,* females (53% and 54% of the district and county population). Significantly to us, *Taylor* and *Duren* address the issue presented in *Colvin.* *Taylor* stated:

"We accept the fair-cross-section requirement as fundamental to the jury trial guaranteed by the Sixth Amendment and are convinced that the requirement has solid foundation. The purpose of a jury is to guard against the exercise of arbitrary power—to make available the commonsense judgment of the community as a hedge against the overzealous or mistaken prosecutor and in preference to the professional or perhaps overconditioned or biased response of a judge. This prophylactic vehicle is not provided if the jury pool is made up of only special segments of the populace or if large distinctive groups are excluded from the pool. Community participation in the administration of the criminal law, moreover, is not only consistent with our democratic heritage but is also critical to public confidence in the fairness of the criminal justice system. Restricting jury *service to only special groups or excluding identifiable segments playing major roles in the community cannot be*

*squared with the constitutional concept of jury trial.* 'Trial by jury presupposes a jury drawn from a pool broadly representative of the community as well as impartial in the specific case.... [T]he broad representative character of the jury should be maintained, partly as assurance of a diffused impartiality and partly because sharing in the administration of justice is a phase of civic responsibility.' " [Emphasis ours.]

And further with regard to gender:

" 'The truth is that the two sexes are not fungible; a community made up exclusively of one is different from a community composed of both; the subtle interplay of influences one on the other is among the imponderables. To insulate the courtroom from either may not in a given case make an iota of difference. Yet a flavor, a distinct quality is lost if either sex is excluded. The exclusion of one may indeed make the jury less representative of the community than would be true if an economic or racial group were excluded.'

.        .        .        .        .

"The States are free to grant exemptions from jury service to individuals in case of special hardship or incapacity and to those engaged in particular occupations the uninterrupted performance of which is critical to the community's welfare. *Rawlins v. Georgia* 201 U.S. 638, 50 LEd 899, 26 S Ct 560 (1906). It would not appear that such exemptions would pose substantial threats that the remaining pool of jurors would not be representative of the community."

Then in *Duren* reaffirming the statements in *Taylor* the court said:

"We recognize that a State may have an important interest in assuring that those members of the family responsible for the care of children are available to do so. All exemptions appropriately tailored to this interest would, we think, survive a fair-cross-section challenge. We stress, however, that the constitutional guarantee to a jury drawn from a fair cross section of the community re-

quires that States exercise proper caution in exempting broad categories of persons from jury service. Although most occupational and other reasonable exemptions may inevitably involve some degree of overinclusiveness or underinclusiveness, any category expressly limited to a group in the community of sufficient magnitude and distinctiveness so as to be within the fair-cross-section requirement—such as women—runs the danger of resulting in underrepresentation sufficient to constitute a prima facie violation of that constitutional requirement. We also repeat the observation that in Taylor that it is unlikely that reasonable exemptions, such as those based on special hardship, incapacity, or community needs, 'would pose substantial threats that the remaining pool of jurors would not be representative of the community.' "

■ This survey of U.S. Supreme Court cases leads us to the view that "distinctive groups" must comprise a substantial percentage of the county population, and in order to not be in advance of U.S. Supreme Court requirements we are of the opinion that ordinarily professions or occupations are not distinctive groups in a community absent a showing of numerosity and lack of community needs to establish a *prima facie* case of systematic exclusion. The flavor of representative ideas of distinctive groups or outlooks play a part in determining if points of view of distinctive groups are missing from the jury pool. Certainly there has been no showing here that physicians and lawyers are "distinctive groups" in the community.

In order to allay the alarm expressed in the dissent, we emphasize that this case is decided on constitutional grounds as argued. We do not in any way diminish the effect of KRS 29A.90. As stated above, we simply do not see that the contents of the affidavit present a violation of KRS 29A.90—29A.100.

The other issues in the case were properly disposed of by the Court of Appeals' decision.

The Court of Appeals' decision is reversed insofar as it remands the case on the jury issue. In all other respects it is affirmed.

STEPHENS, C.J., and GANT, STEPHENSON, VANCE and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents and files a separate dissenting opinion.

AKER, J., not sitting.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

The appellants moved to quash the indictment because the grand jury was improperly drawn and/or to set aside the jury panel for the same reason, and asked for "a hearing on this motion." The motion was accompanied by an affidavit. The affiant "has been actively engaged in the practice of law in the Rockcastle Circuit Court since September, 1960."

The affidavit establishes a *prima facie* case that lawyers and physicians have been systematically excluded from jury service in Rockcastle Circuit Court for the past twenty years, and that school teachers have been automatically excused from jury service for the last five or six years during the March and November terms of court.

The affidavit contains specifics; it is not just conclusory. The motion was overruled. The record shows no hearing on the motion and no waiver of the request for a hearing.

The affidavit provided a *prima facie* case of violation of KRS 29A.090 and of the *Administrative Procedures of the Court of Justice*, Part II, § 13 and 14, which implement the statutory mandate.

The motion and affidavit were sufficient to require the trial court to either sustain the motion or grant an evidentiary hearing. The failure to do either was reversible error.

The majority opinion expressly overrules *Colvin v. Commonwealth*, Ky., 570 S.W.2d 281 (1978). In *Colvin*, we held automatic exclusion of teachers impermissible. We stated:

"This court is of the opinion, and so holds, that the exclusion of an identifiable segment of the community cannot be said to rest in the discretion of the trial judge." 570 S.W.2d at 282.

Our holding in *Colvin* is consonant with the mandate of the United States Supreme Court in *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), which prohibits "excluding identifiable segments" of the community, and *not*, as the majority suggests, "beyond the opinions of the United States Supreme Court in this respect." In any event the *Colvin* interpretation is identical with KRS 29A.090, which provides:

"Automatic exemptions prohibited— There shall be no automatic exemptions from jury service."

The *Colvin* case is a reasonably sound interpretation of United States Supreme Court doctrine, and of recent vintage. It should not be so soon overruled. Further, since the *Colvin* interpretation is codified in KRS 29A.090, it cannot be properly overruled.

The majority concludes that teachers, physicians and attorneys are not "distinctive groups in a community absent a showing of numerosity and lack of community needs ...." I disagree.

The "numerosity" of teachers, doctors and lawyers is irrelevant. *None* should be automatically excluded.

If "lack of community needs" means that a litigant must overcome a court-created presumption that these professionals should be automatically excluded because to do so serves community needs, simply to state this premise is enough to illustrate the problem.

We seem to be evolving towards a rule that in every circuit the chief circuit judge is authorized to make up a list of groups in the community who may be automatically excluded because he knows, innately, that such is desirable. Whereas the state through its legislature is free to grant ex-

emptions from jury service based on "particular occupations the uninterrupted performance of which is critical to the community's welfare," (*Taylor v. Louisiana, supra* 419 U.S. at 534, 95 S.Ct. at 700), *no such privilege* is extended to the courts, by constitution or otherwise.

The power of the court is limited to granting prospective jurors exemptions on an individual basis "upon a showing of undue hardship, extreme inconvenience or public necessity." KRS 29A.100.

Within the past year we denied discretionary review in a published opinion of the Court of Appeals, *Reid v. Commonwealth,* Ky.App., 659 S.W.2d 217 (1983), which reversed the trial court for having excluded "doctors, lawyers, and policemen" as jurors. The Court of Appeals stated:

> "This question was timely raised, and we believe reversal is required since automatic exclusion of these groups constitutes a substantial deviation from the statutory method of jury selection." 659 S.W.2d at 218.

I respectfully suggest that this case, so recently perceived by us as sound, should not be so soon repudiated.

If the majority opinion in this case were limited to holding that counsel did not do enough to raise the point and preserve the error, I would disagree, but I would not be troubled by this decision.

But, unfortunately, the majority opinion goes much further. It overrules *Colvin,* a precedent which is both recent and reasonable, interpreting the United States Supreme Court's mandate on the meaning of the Federal Constitution, and disregards the statutory mandate of KRS 29A.090. It gives carte blanche to circuit judges to decide when to exclude identifiable groups in the community from jury service, whether they should be or not—indeed, whether they wish to be or not.