**COMMONWEALTH of Kentucky, Appellant,**

v.

**Kenneth BYRD, Appellee.**

Court of Appeals of Kentucky.

May 10, 1985.

David Armstrong, Atty. Gen., David A. Marye, Sp. Asst. Atty. Gen., Asst. Commonwealth's Atty., Lexington, for appellant.

V. Gene Lewter, Asst. Public Defender, Lexington, for appellee.

Before CLAYTON, GUDGEL and LESTER, JJ.

CLAYTON, Judge.

The Commonwealth of Kentucky appeals from an order of the Fayette Circuit Court prohibiting it from calling the wife of Kenneth Byrd, Tina Marie Byrd, to testify against him in a criminal trial arising from his indictment for first-degree robbery and being a second-degree persistent felony offender. Kenneth moved the trial court pursuant to KRS 421.210(1) to assert his marital privilege to exclude all confidential communications between himself and his wife. More specifically, Kenneth moved the Court to prohibit his spouse from testifying at all during his trial. Based on the arguments of counsel and *Delk v. Commonwealth*, Ky., 285 S.W.2d 109 (1955), Byrd's motion was sustained. On appeal, the Attorney General argues that Tina Marie should have been permitted to testify at least as to those communications between her and her husband which were of a nonconfidential nature. After detailing the communications it believes fall within that category, the state cites us to *Richmond v. Commonwealth*, Ky., 637 S.W.2d 642 (1982), as authority for the proposition that the Kentucky Supreme Court has recently limited the scope of the spousal privilege. Kenneth counters by referring to the broad definition of "communication" found in *Commonwealth v. Sapp*, 90 Ky. 580, 585; 14 S.W. 834, 845 (1890). In his view, all of Tina's knowledge and observation of the events transpiring at the Lexington Hyatt parking lot in early March, 1984, are the result of earlier confidential communications.

According to the agreed statement of the case filed by the parties pursuant to CR 75.15, the testimony of Tina Marie Byrd would be as follows. In July of 1984, Tina contacted the Lexington Police Department concerning questions about spouse abuse. During the course of making a report to an Officer Lyons, the 16-year-old wife mentioned that her husband had committed a robbery in 1984. Prior to committing the robbery, Kenneth informed her [the wife] of his intent to do so. She accompanied him to the Hyatt. Soon thereafter, she saw him sitting on a low concrete wall on High Street by the Hyatt parking lot. After observing a woman walk past Kenneth, Tina saw her husband begin running after the woman. She did not see her husband

snatch the woman's purse or strike her. Upon Tina's return home, her husband was waiting with a purse. After disposing of the contents of the purse, except for the cash it contained, he told Tina that the woman had struggled and had been hurt. Tina was then instructed to throw away the purse. Instead, she hid it.

After turning over the purse to Officer Lyons in July of 1984, Tina voluntarily recounted the above testimony before the grand jury and indicated her willingness during the September, 1984 hearing arising from Kenneth's motion to testify at trial to the above events.

Thus we are faced with the question of determining in the context of the above events what acts, knowledge or verbal exchanges constitute confidential communications within the context of KRS 421.210(1). The language of KRS 421.210(1) provides in pertinent part that

> (1) In all actions between husband and wife, or between either of them and another, either or both of them may testify as other witnesses, *except as to confidential communications between them during marriage*, provided, however, that in an action for absolute divorce or divorce from bed and board, either or both of them may testify concerning any matter involved in the action, including questions of property, and provided further, that neither may be compelled to testify for or against the other.

■ From the face of the statute, therefore, it is readily apparent that a spouse who wishes to take the witness stand cannot be absolutely prohibited from testifying except as to those communications, made during the marriage, which are confidential in nature. In this respect then the order of the Fayette Circuit Court absolutely proscribing Mrs. Byrd from testifying is in error. She may testify as to any and all nonconfidential communications made during the marriage, and for that matter, any confidential communications between the couple prior to or after marriage but not during the marriage. *See Wells v. Commonwealth*, Ky., 562 S.W.2d 622, 624 (1978) (admitting into evidence the prior testimony of a spouse refusing to testify, where such testimony had been given in a previous trial before the couple's marriage).

Thus the problem is now to determine which of the events Tina recited is a confidential communication subject to exclusion from her testimony. As the appellee points out, *Commonwealth v. Sapp*, 90 Ky. 580, 585, 14 S.W. 834, 835 (1890), speaks directly to this issue, stating in broad terms that

> The word 'communication' therefore, as used in our statute, should be given a liberal construction. It should not be confined to a mere statement by the husband to the wife or vice versa; but should be construed to embrace all knowledge upon the part of the one or the other obtained by reason of the marriage relation, and which, but for the confidence growing out of it, would not have been known to the party.

Were this definition to exist without limitation, we might be inclined to accept Kenneth's suggestion that all of Tina's testimony concerning the robbery is to be excluded. However, there exists a longstanding and clear limitation to those communications which otherwise fall within the category of privileged marital communications.

■ Where the subject matter of the testimony given by a spouse involves acts, occurrences or verbal exchanges which may have been known or seen by any person, the privilege under the statute does not apply. *Gill v. Commonwealth*, Ky., 374 S.W.2d 848, 851 (1964). Therefore, a wife would not be precluded, for example, from testifying that she saw her husband's truck strike a cow at a high rate of speed. *Hughes v. Bates' Adm'r*, 278 Ky. 592, 129 S.W.2d 138 (1939). Nor would it be impermissible for a woman to testify that her husband's revolver was hidden from view when he put on his coat inside their house. *Hall v. Commonwealth*, 309 Ky. 74, 215 S.W.2d 840 (1948). In both instances, the occurrences happened such that any person could have observed them. The rationale supporting the rule was simply not present

in these situations as the communication was not confidential within the context of the statute.

 Applying the limitations of *Gill, supra,* to the present situation, we first conclude that Kenneth's statement of intent to commit the robbery apparently made to Tina Marie outside the presence of third parties, is a privileged confidential marital communication which Tina may not testify to during trial. In the same vein, neither may she testify that Kenneth told her that the victim struggled and got hurt. Both these private verbal exchanges run to the essence of the rationale supporting the statute. Absent disclosure of such statements before third parties, they are utterly protected in the context of the present criminal trial. *See Clark v. Commonwealth,* 269 Ky. 587, 108 S.W.2d 532 (1937); *York's Ancillary Adm'r. v. Bromley,* 286 Ky. 533, 151 S.W.2d 28 (1941). While the question may be somewhat closer, we also conclude that Tina Marie may not testify that she watched her spouse rifle the contents of the purse or that she was given the purse to dispose of. These actions occurred in the couple's home, apparently while they were alone and would not have happened had not the two been married. The Commonwealth suggests that since the purse was snatched in public and was capable of being seen at that time, any subsequent developments between the defendant/appellee and his wife concerning the purse are admissible into evidence, the marital privilege notwithstanding. The first problem with this argument is that the record is devoid of any evidence as to whether anyone did or could have seen the actual robbery or Kenneth's flight therefrom. We simply have no way of knowing if the purse, once stolen, was visible or capable of being seen by anyone. The second problem with the state's argument is that the robbery of the purse, and its subsequent rifling and concealment, are two distinct events. That the first occurrence may have been capable of being seen by the public does not mean that the second sequence of events is automatically designated a nonconfidential communication.

To the contrary, all the facts contained in the agreed statement indicate that this is not so.

 Finally, with respect to any observations Tina made while at the Hyatt, she may testify as to what she personally observed, including the approach of the woman, Kenneth's presence on the wall and his rapid departure after the woman. These events fall clearly within *Gill, supra.* By categorizing the above events and exchanges as confidential or nonconfidential communications, we specifically do not expand nor contract the scope of KRS 421.-210(2). Nor do we believe that *Richmond, supra,* has done so. As it involves facts materially distinguishable from the present appeal, we find it nonpersuasive in the present context.

The order of the Fayette Circuit Court is affirmed as to those communications we have determined to be confidential and reversed as to those communications classified as nonconfidential.

All concur.